DOCKET No.

# CV 02 6701

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

............................................................

Sam M. Chudnovsky,

Plaintiff,

- against-                                    JOHNSON, J.

Leviton Manufacturing Co., Inc.,
Stephen Sokolow,

Defendants                  BLOOM, M.J.

............................................................

# COMPLAINT



RECEIVED
DEC 2 4 2002
PRO SE OFFICE

Sam M. Chudnovsky
PRO SE
98-09 64 Th Road Apt. 6D
Rego Park, NY 11374
Tel. 718-997-8165

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x

*S A M   M.   C H U D N O V S K Y*

                  Plaintiff,

      -against-

*L E V I T O N   M A N U F A C T U R I N G*
*    C O.  I N. C.  A N D*
*S T E P H E N   S O K O L O W,* Defendant(s).
----------------------------------------------x



**COMPLAINT**
JURY TRIAL DEMANDED
  ☑   YES
  ☐   NO

This action is brought for discrimination in employment pursuant to (check only

those that apply):

> ☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2e to
> 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991,
> Publ. L. No. 102-166) (race, color, gender, religion, national origin).

Note: In order to bring suit in federal district court under Title VII, you must first
obtain a right to sue letter from the Equal Employment Opportunity Commission.

> ☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
> 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in
> Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights
> Act of 1991, Pub. L. No. 102-166).

Note: In order to bring suit in federal district court under the Age Discrimination
in Employment Act, you must first file charges with the Equal Employment Opportunity
Commission.

> ☐     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-
> 12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166).

Note: In order to bring suit in federal district court under the Americans with
Disabilities Act, you must first obtain a right to sue letter from the Equal Employment
Opportunity Commission.

## JURISDICTION

Jurisdiction is specifically conferred upon this United States District Court by the
aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be
appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of
1991, Pub. L. No. 102-166, and any related claims under New York law. Within 90 days of the
commencement of this action, the Equal Employment Opportunity Commission (EEOC) issued a
right to sue letter.

## PARTIES

1. Plaintiff resides at: _98-09 64th ROAD APT. 6D REGOPARK_

                              Street Address                      City

_QUEENS_         _NEW YORK_     _718-997-8165_

    County               State           Telephone Number

2. Defendant(s) reside(s) at, or its business is located at:

_59-25 LITTLE NECK PARKWAY_   _LITTLE NECK_

                Street Address                      City

_QUEENS_         _NEW YORK_     _718-229-404_

    County               State           Telephone Number

✗ 3. The address at which I sought employment or was employed by the defendant(s) is:

_59-25 LITTLE NECK PARKWAY_   _LITTLE NEC._

          Street Address                      City

_QUEENS_         _NY_

    County               State

4. The discriminatory conduct of which I complain in this action includes (check only those that apply):

        ❑    Failure to hire me.

        ❑    Termination of my employment.

        ☒    Failure to promote me.

        ❑    Failure to accommodate my disability.

        ☒    Unequal terms and conditions of my employment.

        ☒    Retaliation.

        ❑    Other acts (specify): _HARASSMENT, HOSTILE WORK ENVIRONMENT_

        Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.

5. It is my best recollection that the alleged discriminatory acts occurred on: _07. 23. 2001_
                                                             Date

6. I believe that defendant(s)  (check one)

        ☑    is still committing these acts against me.

        ❑    is not still committing these acts against me.

7. Defendant(s) discriminated against me based on my:  (check only those that apply and explain)

    ___ Race _____        ___ Color _____

    ___ Gender/Sex _____       ___ Religion _____

    √ National Origin __RUSSIAN BORN__

    ___ Age _____        My date of birth is: __10. 10. 49__

    ___ Disability _____

        Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.

8. The facts of my case are as follows:

_____

_____

_____

_____ *SEE ADDITIONAL SHEETS* _____

_____

_____

_____

_____

_____

_____

(Attach additional sheets as necessary)

Note: As additional support for the facts of your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.

9. It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on:     *04. 02, 02*     .
                                                        Date

10. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on:
    *04, 02, 02*     .
        Date

**Only Litigants Alleging Age Discrimination Must Answer Question #11.**

11. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct (check one),

        ❑    60 days or more have elapsed.

        ❑    less than 60 days have elapsed.

12. The Equal Employment Opportunity Commission (check one):

        ☐     has not issued a Right to Sue Letter.

        ☑     has issued a Right to Sue Letter, which I
                 received on _____ *10. 24.02.*

      **Note:** Attach a copy of the Right to Sue Letter from the Equal Employment
Opportunity Commission to this complaint.

      WHEREFORE, Plaintiff prays that the Court grant such relief as may be
appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: *01. 10. 03*

                                          _____
                                          Plaintiff's Signature

                                    *98-09 84 ROAD, APT. 6D*
                                          Address

                                    *REGO PARK, NY 11374*
                                          Telephone Number

                                    *718- 997-8165*
                                          Social Security Number

1.    Sam M[...]udnovsky ("Chudnovsky" or "Plaintiff") h[...] brought this Complaint against Leviton Manufacturing Co., Inc ("Leviton") and individual Stephen Sokolow Executive Vise President Co-owner of 70% of Leviton ("Sokolow") in both his Personal and Official Capacities pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq.,

2.    Plaintiff also brought this Complaint against Leviton pursuant to the New York State Human Rights Law, N.Y. Exec. Law §§290 et 296(6), and the New York City Human Rights Law, N.Y.C. Admin. Code §§8-107(1)(a) et seq. and any other Applicable Laws.

3.    Chudnovsky further asserts Claims against Individual Sokolow under 42 U.S.C. §§1981 and 1983, New York Executive Law §296, and New York City Administrative Code §§8-101 in both Personal and Official Capacities.

4.    Chudnovsky further asking the Court to enter Order and Judgement against Leviton, Sokolow (together "Employer" or "Defendants") for remedies like:

1) Compensatory Damages for Back Pay with the Interest as Plaintiff underpaid because of Discrimination and Retaliation for Complaining (ex AA, BB, CC);

2) Injunctive Relief to Promote Chudnovsky to Senior Mold-Designer; provide training in Mold-Flow-Technology ("Mold-Flow"); to Order that 'Performance Planning and Review' dated 09.05.2001 ("Review") be changed back to it's original content (as it was signed by several managers and by Chudnovsky and as it was before Sokolow ordered to changed it);

3) Punitive Damages as Employer has engaged in intentional Discrimination Retaliation and has done so with Malice and with Reckless Indifference to the Federally protected Rights of Chudnovsky. The Defendants knew it was acting in Violation of Federal Law, Egregious or Outrageous acts and it serve as evidence supporting an inference of the requisite 'evil motive.'

4) Expenses and Costs;

5) Nominal Damages;

6) Compensatory damages for emotional pain and suffering; Intentional and/or negligent infliction of emotional distress;

7) Harassment as Defendants created a working environment unreasonably inferior to what would be considered normal for Mold-Design position; there are repeated and severe incidents of harassment that, taken as a whole, would deter an average person from the exercise of their Rights;

8) Retaliation;

9) Hostile Work Environment as Chudnovsky' working environment changed since the previously filed complaints ("Prior Proceedings") to become unreasonably inferior and

6

adverse when compared to a typical or normal, not ideal or model workplace. Leviton Discriminate against Chudnovsky on account of National Origin by isolating, excluding from business decisions and denying opportunity for career growth. While none Russian born and less-qualified employees were hired and promoted to the jobs Chudnovsky was clearly qualified to perform.

        10) Defendants have prior notice that requirement for promotion and transfer system has a sharp and crippling discriminatory impact on Chudnovsky. Defendants' failure to take action in the face of this prior notice constitutes an intent to continue the system and therefore the Defendants must be considered to have intended the continued discrimination;

        11) Selective Prosecution as Chudnovsky was denied certain economic benefits and opportunities for promotion as punishment for my Prior Proceedings and in Retaliation for further requests to be 'Treated Equally to my Coworkers'(exhibit F);

        12) Breach of Duty to take reasonable steps to remedy the Prior Proceedings;

        13) Declaratory judgment Declaring that Leviton' action violated Federal and New York City and State Law and that Leviton Discriminate against Chudnovsky and other Russian born employees of Mold-Design Department ("Department");

        14) Chudnovsky further asking the Court to enter any other Judgment against Defendants as Court determine proper.

     5.     Leviton owned and controlled (about 70%) by families of Leviton, Sokolow and Hendler. About 30% owned by Tomas & Betts Company (8155 T & B Boulevard Memphis, TN 38125. Tel. 901-252-8000, Fax 901-680-5112).

     6.     Sokolow is individually subject to suit under, among others, NYHRL §296(1) as an employer "to have any ownership interest or power to do more than carry out personnel decision made by others" ((Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542 (1984), (Tomka v. Seiler Corp., 66 F.3d 1295,1317 (2d Cir. 1995)).

     7.     Leviton and Sokolow created a fraudulent performance evaluation for plaintiff in response to plaintiff's Complaints and submitted that fraudulent performance evaluation to the New York State Division of Human Rights ('NYSDHR') to give the impression that plaintiff had received a legitimate poor performance evaluation. Plaintiff further claims that he reviewed the fraudulent evaluation during those proceedings and, realizing that the evaluation would be relied on by Defendants in providing any employment reference he might request and that communication of the Fraudulent evaluation would affect his ability to receive future employment (exhibit R);

     8.     Chudnovsky joined Leviton employ in October of 1987. Since 1996 Complaining Chudnovsky subject to Demotion, Harassment, Discrimination and Retaliation, proportional Decrease Compensation and other Adverse Employment Actions by Employer. Those and some other Wrongs are subject to Prior Complaint to EEOC No: 16G-97-0494 & Prior Complaint to SDHR No: ID-E-N-97-2305496-E dated 08/12/97. Prior Complaint to Federal Court for Eastern District of New York Case No: CV 00 0470 filed on 01/21/2000 (together "Prior Proceedings").

9.      Instant Complaint stemmed from the extended period of National Origin Discriminatory conduct by Leviton; an Official Policy of National Origin Discrimination against Russian born employees; Leviton' Tolerance and Condemnation of National Origin Discrimination against Russian born employees; Leviton and Sokolow Harassment and Retaliation against Chudnovsky for filing Prior Complaint to EEOC and to Court; Leviton and Sokolow Retaliation for Chudnovsky written statement "Disagree and Requesting: 1) to be promoted to Senior Mold-Designer; 2) to be formally train on the Mold-Flow; 3) to be treated Equally to my coworkers" (exhibit F).

10.     Leviton permitted extended period of National Origin Discriminatory conduct, took no proper actions to remedy the Prior Proceedings, continue the same, suggest an official policy of Discrimination. Evidence that Leviton tolerate and condoned Discrimination conduct over 15 years period of time constitute malice and reckless indifference. Leviton, who is on notice of harassing behavior has a duty to "Take reasonable steps to remedy it" (Distasio, 157 F. 3d at 65). Instead it is permitted and escalated unlawful action against Chudnovsky.

11.     Leviton continue to Discriminate against other Russian born employee Mr. Aronin ("Aronin"), and Aronin in turn continue to maintain hostile and abusive work environment by delivering to Chudnovsky Aronin' own grievances. On many different occasions the Employer was worn of those complaints but took no proper action to stop discriminate against Aronin and remove grounds for complaining. Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997) (finding that harassment of other minorities was relevant to whether a black police officer experienced a racially hostile or abusive working environment).

12.     Chudnovsky prevented from Professional training and other form of Professional growth by denying contacts with the facilities, vendors, suppliers, management, engineering personnel. Chudnovsky no longer assigned to projects that would help qualify for promotion, was not notified of an opening for a position Senior Mold-Designer for which he was qualified. Carrero v. New York City Housing Auth., 890 F.2d 569, 579 (2d Cir. 1989) (noting that denying plaintiff "adequate training" contributes to a hostile work environment in which plaintiff is deprived "of a fair and equal opportunity to succeed at her position").

13.     The hostile environment created by the Employer is just the sort that "can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers," contrary to "Title VII's broad rule of workplace equality." Harris, 510 U.S. at 22. Chudnovsky provide below ample basis for a determination that his work environment at Leviton "would reasonably be perceived ... as hostile or abusive," Harris, 510 U.S. at 22, i.e. that the objective requirement in Harris is met.

14.     Leviton failed to investigate Chudnovsky harassment and retaliation complaint in the manner provided by company policy, that is, by making written findings and circulating them to involved parties - my complaints to my Supervisor Mr. Toussaint ("Toussaint") and Vise President Mr. Plaia ("Plaia"). Title VII's prohibition of retaliation extends not just to formal charges of discrimination, but also to "informal protests, including making complaints to management ... ." Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2d Cir. 1990).

8

15.     Defenda█ █refused to provide Chudnovsky with the sa█ █evel of supervisory support (by Mr. Pilapil) that he gave to similarly situated, not complaining, employees of the Department.

16.     Every move Chudnovsky making at Leviton must be weighted against sanctions by Sokolow & Pilapil. Chudnovsky no longer requesting to be transfer from Pilapil supervision as I did (the other reason for this is the Leviton permeated with the knowledge of my problem, some employees and managers fear talk to me, other afraid retaliation for contacts with me; some no longer say hello to me). Chudnovsky no longer requesting for professional training, trips to facilities. No more requests to have my computer updated to the level of other Mold-Designers. There should be no doubt that Plaintiff would have applied for a job training and for transfer from Pilapil had it not been for the company's deeply entrenched Discriminatory practices. But last time I request something Sokolow reduced my compensation for about $ 2000.00 per year. Leviton breach of an implied contract and under the quasi-contract doctrine of quantum merit because it did not pay me a bonus as it had in years past as my 2001 year end bonus was reduced to 50 %.

17.     Chudnovsky was stigmatized by an unwarranted and illegal adverse employment action by Sokolow order to reduce my compensation made with the solo purpose of harming plaintiff. The changed evaluation is not detailed and not based on objective factors. Sokolow acted dishonestly and use unfair and improper means to reduce my evaluation grade by ignoring usual ruts, bypass the ordinary procedures when secretly changed and forge written and approved documents in order to silent me; to stop from participate in protected activities when I opposed unlawful employment practice and refuse to resign from my job. Sokolow downgraded my evaluation despite the fact that my own supervisor and director of Department satisfied with my job performance. Sokolow reduce my compensation after it was approved by four (4) highly ranked managers. Sokolow exhibited deliberate indifference to constitutional violation and these actions have chilling effect on Chudnovsky' (exhibit F, R)

18.     Leviton launched a companion to socially and professionally isolate Chudnovsky by spreading rumors of my conflict with Pilapil, suppose firing, misconduct, work place disturbances. As a result I was not invited to celebrate Rosh-Hashanah party with my coworkers during lunch time. I'm not welcome any more to share a ride with some of my coworkers to go to party and was required to drive along as other share there cars. My business and social communication limited to those who brave to come to my cubical. I'm no longer go to see my friends at Leviton to avoid additional trouble for them. It's constant straggle to be good.

19.     Some others retaliatory acts by the Employer include: 1) Increased supervision by requesting 'cosmetic accuracy' of drawings made by Chudnovsky, no other employee required to do so (noting that increased supervision could disadvantage and interfere with employee's ability to perform his job and thus could constitute adverse action); 2) Brand new requirement to provide "job card" (whatever it suppose to mean), no explanation was given, no instruction, no reason explained, confusing and misleading. No other Mold-Designer required to provide it (ex S, EE, FF, LL); 3) Brand new demand for "Reasons for 4 day vacation carryover" (ex Z), this is in violation of Leviton written policy (ex T page 28) and policy in fact as nobody subject for such a requests; 4) Threat, and actions in conformity of threat, of adverse employment actions for fake and phony accusations of 'overuse business telephone' and 'job performance went down' and 'take advantage of the situation" (ex J, K); 5) Brand new pattern of withholding Plaintiff' drawings, after drawings were checked by management. No other Mold-Designer subject to such

9

withholding; 6) Continually paid reduced salary; 7) Denied training, promotion, 'to be treated similar to my coworkers, 8) Exclusion and isolation became more severe recently – not invited to the Rosh-Hashanah party as people afraid to be associate with me; 9) Other get additional Mold-Flow training as I'm denied basics.

20.     Chudnovsky took all reasonable actions to take advantage of any preventive or corrective opportunities *'provided'* by Leviton and to avoid harm otherwise. But Leviton actual participation in discrimination and retaliation and spreading rumors by upper management in fact made written anti discrimination policy ineffective. The written anti discrimination policy exist primarily to protect Leviton management from blame, it breeds cynicism and actually promotes discriminate behavior. In fact, it is worse than no policy at all (ex T).

21.     Leviton undertook a great deal of changes in a ways molds designed and run. Some very fundamental industry standards are changed or ignored. Such as but not limited to: gate design, runners size and constructions, cooling system and size of water lines. Chudnovsky kept unaware of those developments and when confront Toussaint the answer was "just do what I said" or "I attended seminar and know this will work." Some of the changes I required to implement came after visiting Leviton facilities by Pilapil/Toussaint. Plaintiff denied each and every attempt to see his molds running. It take me more time and energy to get information and data readily available to others. In most cases Mold-Designer get it by proper training and visiting Leviton facilities, through communications with moldmakers and other employees at facilities (ex N).

22.     Pilapil and Toussaint conduct new Projects evaluation using Mold-Flow, get needed data and keep it from Chudnovsky. Project assign to Chudnovsky come without informing him of the data gathered, and when Chudnovsky' design not confirm with Mold-Flow analysis Chudnovsky blamed for 'making a mistake' or 'it's serious mistake.' Plaintiff requested training but was denied. Leviton keep Chudnovsky not train, doing job by old way. When project is submitted for checking to Pilapil/Toussaint they proceed to correct my project based on the data available to them from Mold-Flow. This data kept in password protected file not available to Chudnovsky (ex MM).

23.     Chudnovsky precluded from properly using Intranet. My PC lacked several important programs such as, but not limited to, Spell-Check program ("Spell-Check "). All Mold-Designer and all engineering division have the Spell-Check available. On 05.10.2001 I asked Paul Kadar to install the Spell-Check in my computer. He premised but never did. On 05.11.2001 I asked Scot Hale to install the Spell-Check in my computer. He premised but never did. On June 11, 2001 I wrote to Toussaint/Pilapil about needs of the Spell-Check. Lack of the Spell Check prevent me from normal written communication.

24.     By 05.09.2001 memo "ME 10, Solids on PC's" I was assigned to training class. I'm the only Mold-Designer in this last class at Little Neck and I get only about 2 (two) hours training. All other Mold-Designer were given 8 (eight) hours professional training by Co/Create Company who developed "ME 10, Solids on PC's" programs. Chudnovsky get this training and a PC about 12 (twelve) months latter then any other Mold-Designer. (As a direct result of this last class training Juan Calderon, Jeff Weinberg, William Bowie, and Roger Moreno the trainer, were fired on or about 07.13.2001 shortly after the class). I did spent a great deal of personal time and energy to compensate for lack of proper training and for about 12 (twelve) months delayed in training and PC installation on my desk (ex D).

Facts of More Severe Retaliation and Hostile Work Environment in Chronological
Order

25.    On or about June 9, 2001 Chudnovsky filed with court in the Prior Proceedings
opposition documents to defendants motion for summary judgment. Those documents contain,
among others, facts and evidence supporting Chudnovsky case. Those documents also provide
evidence that:

   1) Leviton withhold material documents and information from NYSDHR/EEOC
   investigators in Prior Proceedings and those documents confirm that Pilapil, director of the
   Department, prohibited to speak Russian to other Russian born employee, beside
   Chudnovsky (ex W);

   2) Leviton provided to INS fraudulent information about one of then job applicant
   (none Russian) and illegally obtain permission to employ and employed that person.
   Those documents were provided to Chudnovsky by Leviton during Discovery;

   3) Chudnovsky provided evidence that the attorney to the defendants repeatedly
   lied to the court on many occasions, lied and misinformed witness during deposition. Those
   allegations were never questioned, never refuted, never objected. Chudnovsky asked court
   to have the attorney to the defendants to be removed from the case (ex M,GG, HH);

   4) Chudnovsky provided evidence that Leviton discriminated against other Russian
   born employees (but not limited to) Aronin, Mr. Gofman and Ms. Bogorad (ex RR).

26.    About 40 (forty) days after Chudnovsky filed with court in the Prior Proceedings
(see item 25 above) more severe companion against Chudnovsky begging. On or about
07.16.2001 at the end of business day I was assign by Toussaint & Pilapil to design mold project
BA41843. Next day Toussaint left for 3 (three) days vacation and Pilapil refuse to communicate
with me. Toussaint & /Pilapil fail to provide me with the information need, with software required,
and without proper instructions. When Toussaint came back from vacation on or about
07.23.2001 at 9:40 a.m. I informed Toussaint that "solid for BA41843" was never delivered to me
by facility. Toussaint responded " Why did you waist time and not made sold by yourself." I reply
"I did not waist my time and I get ready for the job but sold never came to me." I was never
instructed nor get enough data to make solid myself. It must be done by Product engineer. Instead,
based on the limited information available I put together and get ready the information needed to
design project BA41843. The fact is that Toussaint/Pilapil unsuccessfully negotiated with facility
subject matter of solid for about two month and hold me responsible for his failure. This incident
is a set-up and was immediately reflected in "Performance Planning and Review" dated
09.05.2001("Review "). The Review is a fake, phony and fraud and signify a new beginning of
national origin discrimination, harassment, retaliation against Chudnovsky. The Review is in
compliance with previous threats by Leviton to take actions against Chudnovsky for refusal to drop
the Prior Complaints, refusing to quit the job at Leviton and an attempt to fourth me out of
Leviton (ex E, F unnumbered page 3 part I.3;  J, K).

27.    On 08.10.01 at 12:02 a.m. Aronin came to my cubical and said "Al [Pilapil] gave
me raise less then he promised. I previously explained to Al my needs and he promised... I use to
get even number like $ 50.00, now I get something with change. But I calculated it back - it's 4%.

11

Al never changed my posi..., like to Senior or so. In other departments people get promoted. I'm 12 employee with Leviton and no changes. Al told me 'be happy, others get fired and you get your raise'"). Aronin, Russian born, fear to bring his complaints to Leviton and use Chudnovsky to have his grievances eared. Chudnovsky complained to Leviton about hostile work environment and that Aronin make Chudnovsky' life even worse. No proper actions taken to stop it. Aronin and Chudnovsky the only Russian born Mold-Designer (at that time) paid less than other Mold-Designer, got lesser raise, no promotion, no transfer from "Low Pay Zone" created and managed by Pilapil.

28.    On or about 08.20.2001 at 4:45 p.m. Aronin came to my cubical and said "Mr. Turabian just shown me his business card. His job position is Senior Mold-Designer. Turabian told me that he knows from Pilapil that he, Turabian and Enzler are have same job position with Leviton [Senior Mold-Designer].

29.    On or about 08.22.2001 at 9:40 a.m. Aronin came to my cubical told me about his and Turabian yesterday business trip to attend business seminar in a place 5 miles from city of Philadelphia. There were about 40 different people and it was very interesting and useful business seminar with the tour to facilities.

30.    On or about 09.06.2001 at 10:20 a.m. phone call from Toussaint. Chudnovsky was called to his office to have Review. Chudnovsky disagreed with Review and made it known verbally and by making some written comments. First I stated verbally as followings: 1) I should be rated as 'Exceeded Expectation (EE)' and provided document supporting this requirement. 2) My compensation increase are lowest in the Mold-Design group; 3) In dollar it's one half (1/2) of others Mold-Designer for the last five (5) years; 4) My compensation lower then any other Mold-Designer but I'm longest working Mold-Designer; 5) I'm not treated as other Mold-Designer, I'm disputing that I'm Mold-Designer, I was demoted to Draftsmen; 6) I'm not permitted to take any trips to facilities for years, nor business related seminars, nor visits to vendors and suppliers; 7) I'm working without benefit of consulting with more experience manager (it is important to say that no communication with, nor say any word to Pilapil since I was required by Pilapil, sometime in 1997 not to speak Russian, excluding deposition in the Prior Proceedings). My contacts with Toussaint, most of the time, as he said "You do - I'll check. Period" (ex F).

31.    On the same meeting as item 30 above Toussaint stated as followings: 1) Are you doing the same job as other Mold-Designers? (Chudnovsky replied: I do not know what they are doing, I do not select jobs, you give it to me to do ...); 2) Are you doing 'Cam-Molds'? (Chudnovsky replied: I never fail to any job, what I'm given I done); 3) Your statement about compensation are not supported. (Chudnovsky replied: I have data provided to me by Leviton it's part of the Prior Proceedings; 4) You refuse to go with me to Mexico about three (3) years ago. (Chudnovsky replied: Because I was sick at that moment, I never get any other opportunity. At the last Department meeting with Hakki Tansy - senior Vise President order that every Mold-Designer must go to Leviton facilities on yearly bases. I'm treated differently ...) [only Sokolow have capacity to change Tansy order]; 5) You are not treated differently, you "Met Expectation" and you will get four present (4 %) raise. (Chudnovsky replied: I disagree ...) (ex AA, BB, CC).

32.    On the same meeting as item 30, 31 above Chudnovsky was not given explanations who may be "other sources when I (Marcel Toussaint) is not available;" 2) Toussaint & Pilapil fail to "We will establish a six months program where specific improvement will be evaluated"

("Program"). There were  mentioning about the Program during the  ng or at any other time thereafter. Toussaint & Pilapil never intended to create the Program – no Program, no way Chudnovsky to prove compliance. Toussaint & Pilapil made notice only to lay out ground for further vicious attacks by Sokolow (ex R);

33.     On the same meeting as item 30, 31, 32 above Chudnovsky asked in writing 1) To be promoted to job position of Senior Mold-Designer; 2) To be formally train in "Mold-Flow;" 3) To be equally treated as to similar situated coworkers.

34.     On or about 09.13.2001 at 2:55 p.m. Toussaint told Chudnovsky that 'Ed Plaia call meeting to discuss your comments to Review. Presented: Plaia, Pilapil, Toussaint and Chudnovsky. Verbatim of the meeting as followings:

| | |
|---|---|
| Plaia: | [Shake my hand and ask] are you happy? |
| Chudnovsky: | I'm not. |
| Plaia: | I like to have a happy people working for me. Your first comment [ex F] to be promoted to job position of Senior Mold-Designer. There is no such position. Only two kind of job position exist Mold-Designer and Draftsmen. |
| Chudnovsky: | I'm sure you are not aware of lawsuit I previously filed against Leviton and Pilapil. Based on the data provided to me by Leviton Paul Greco, David Gofman,Mr. Turabian are Senior Mold-Designer |
| Plaia: | We eliminated this position, yes Al [Pilapil] ? |
| Pilapil: | This is the matter of HR [Human Resources] ... what is the next comments of his ... |
| Plaia: | You can't request a promotion, it should be earned. I did not ask to be transfer back to New York [from Taxis], I was transferred ... you can't request to be a wait lifter if you can't lift wait ... |
| Chudnovsky: | If I want to be promoted what should I do? |
| Plaia: | Earn it... Your next comment to be train in Mold-Flow. We train one person and the trainer will train others. |
| Chudnovsky: | Based on the materials of my lawsuit some other employees were offered training in Mold-Flow. This is why I'm also asking for training in Mold-Flow. |
| Plaia: | O.K. Next Comment "To be equally treated as to similar situated coworkers." Most difficult ... Are you treated differently? |
| Chudnovsky: | Yes, I'm discriminated. |
| Plaia: | We found no discrimination.  [Shake my hand said good luck]. |

(This meeting lasted for about 3 - 5 minutes. After the meeting I asked Toussaint about written report but was told that nobody took notice and there will be no written reports. Leviton' s Little Neck Employee Handbook (5/01/01) on page 16 state, among others, "Verbal report of harassment must be reduced to writing ... " It was never done, no single complaint out of many, filed by Chudnovsky was reduced to writing.). The decision not to promote Chudnovsky is arbitrary as it is not based on the facts; determination to deny him a promotion was without rational basis in fact or law; and it confirm that there is an invidious pattern of anti-Russian discrimination by the Department and upper management. An action is arbitrary because it is without sound basis in reason and is taken without regard to the facts (ex F page 1; T, O, P) ).

13

35.   On or about 10.12.2001 at 3:30 p.m. get phone call from Toussaint told me to get to his office. Verbatim of the meeting as followings:

Toussaint:   I was informed by Fogel that Sokolow reviewed yours evaluation [Review] and decided to gave you 2% (two per sent) raise not 4% as I was promised to you and changed your performance to 'Partially Met Expectation' down from 'Met Expectation' as I [Toussaint] marked

Chudnovsky:   Did he stated why he did so?

Toussaint:   I did not spoke to Sokolow. **Fogel did not gave me explanations**

Chudnovsky:   So, how I can improve myself or get back to 'Met Expectation' if I do not know what I did wrong?

Toussaint:   You are in a very difficult situation, **you complained ...** You have to speak to Fogel ...

Chudnovsky:   Is this your opinion or Fogel told you this?

Toussaint:   Fogel said " If you have any further questions talk to Fogel"

Chudnovsky:   I'll think about, but I'm asking you, my manager, to get me a copy of my written Review **with the changes and let me know why it was done.**

Toussaint:   To summarize 'you will get 2% (two per sent) raise, not 4% (four per sent) raise as I promised to you during evaluation Review and your rating changed 'Partially Met Expectation' down from 'Met Expectation.'

Chudnovsky:   [Left his office but came back in a minute after examining latest pay advice] Marcel, I did not get any raise at all! Today is the day I suppose to get raise - I get my 53 pay advice since my last raise.

Toussaint:   I just get Email about it (looked at his computer for Email) you approved starting 10.10. 2001.

Chudnovsky:   Can I get a printed copy or send it to me by Email

Toussaint:   I do not see why not (printed a copy for me)

Chudnovsky:   Thank you (ex Q) [I get reduced raise 8 days later then suppose to]

36.   On or about 10.17.2001 at 11:15 a.m. and later, same day. Verbatim of conversations as followings:

Toussaint:   Give me back Checked Copies of project MJP63282 ("Checked Copies ") you recently design

Chudnovsky:   Will you give the Checked Copies back to me?

Toussaint:   Yes

Chudnovsky:   [Brought to Toussaint the set of the Checked Copies]

Toussaint:   [Later same day Toussaint brought to me back some of the Checked Copies, but not all]

Chudnovsky:   You did not gave to me all the Checked Copies. Do you want to keep the rest of the Checked Copies?

Toussaint:   Yes. You may make a copy for yourself.

Chudnovsky:   I'll make copies tomorrow and will return to you the Checked Copies. [I'm positive Pilapil & Toussaint collect the Checked Copies to justify Leviton/Sokolow adverse actions]. Since this day most of intermediate drawings submitted to Toussaint & Pilapil as part of business routine are withheld and never returned to Chudnovsky.

This was never done before and never done to any other Mold-Designer.

14

37.    On or about 10.18.2001 at 4:25 p.m. Toussaint came to my cubical and said:
"I finally asked him [Fogel] questions you previously asked me. Fogel said that Sokolow out of
town, when he come back [Fogel] will ask him [Sokolow] why **the changes were done.**"
"Chudnovsky said "Thank you for not forgetting to ask my questions." Toussaint replied "I do
remember, some time I forget, but it's coming back. This time I did wrote it down."

38.    On or about 10.24.2001 at 1:20 p.m. verbatim conversation in my cubical:

> Toussaint:  This is what you requested [and gave me corrected "Personnel
>             Change Record Effective Day 10.10.01"]
> Chudnovsky: Do you know why it was changed from the one I signed?
> Toussaint:  No. They feel they can do it ...
> Chudnovsky: They never told you why it was done ...
> Toussaint:  Probably because you made the complaints ... I'm a small fish,
>             Sam ... I will not ask why it was done to you ...
> Chudnovsky: Thank you, Marcel (ex F, R).

39.    Chudnovsky was never explained, nor told, nor mentioned to: (1) why they gave
Chudnovsky reduced by 50% (fifty per sent) only 2% (two per sent) raise; (2) why they changed
Review performance to 'Partially Met Expectation' down from 'Met Expectation;' (3) why they
changed Effective Day from October 2, 2001 to October 10, 2001; (4) why they chose
October 10 as a new Effective Day -- Chudnovsky' birth day (ex R).

40.    Defendant Sokolow ordered change the Review after it was signed by several
managers and by Chudnovsky. Fogel made the changes in secret from those who previously signed
the Review. Fogel done it in violation of Leviton written police stated "A collaborative action plan,
developed by the employee and his/her supervisor, should include interim objective and steps for
improving overall performance." No plan was created as Fogel refuse to disclose any reason for
his [Sokolow] actions, for reducing overall rating, for changes and reducing annual compensation
adjustment, delayed annual compensation adjustment. Those facts are malicious act designed to
harass and intimidate, to silent my protests against continuous discrimination and retaliation for the
request to be "treated equally to my coworkers" (ex R page 2).

41.    Chudnovsky took steps in attempt to correct mysterious none compliance by asking
Leviton for the opportunities to attend, available to all but Chudnovsky, 'Module VIII: Correcting
Performance Problem' I sent request to HR department - Fogel is director. Request was denied.

42.    On or about 10.25.2001 at 10:45 a.m. new project ("Project BA42406 ") was
given to me. This is first (and happened to be last) real project since Prior Proceedings back in
1997. I was told by Toussaint that Project BA42406 should be done for reference, with vertical
surfaces tapered, and radii added. I was told to ask George [Enzler] for help. (Enzler is the latest in
the Mold-Design group hired, less experience Mold-Designer, but favorite by management and
afforded all possible training including Mold-Flow. Those training were requester by Chudnovsky
and denied.)

> Chudnovsky:  Why should I ask Enzler for a help?
> Toussaint:   If you have question ... it's very complicated project ...[Toussaint did
>              not state main reason which is Leviton fail to train Chudnovsky to perform
>              some of the operations needed to complete this project]

Chudnovs[] What shrinkage should I use? [No proje[]n be started without knowing shrinkage, only management knew shrinkage]

Toussaint: I'll find out from Pilapil ...

Chudnovsky: I need 2D drawing BA42406 [No project can be started without 2D drawing]

Toussaint: I will ask for 2D drawing ...

Chudnovsky: How many units per cavity should I made [Very important information only management knew it]

Toussaint: I'll find out from Pilapil.

43.     On or about 11.14.2001 at 4:35 p.m. Toussaint came to my cubical, gave me one sheet document containing picture of the part used in Project BA42406. The purpose of this document was never explained to me. The document was unnamed, undated, unsigned, uncompleted, confusing. Such a document was never used in monitoring Mold-Design before and never given to other Mold-Designer. I was told by Toussaint "Give it to me back when you done with Project BA42406, put your name and the date you done. I return it to Toussaint together with finished Project BA42406 . Since this day it became accustom to provide Chudnovsky with similar documents at the time I given most of other projects) (ex S, EE, FF, LL).

44.     On or about 11.15.2001 at 2:50 p.m. Aronin came to my cubical: Pilapil do not allow me to Carryover Vacation 5 days, though I'm entitle to do so.

Chudnovsky: Why?

Aronin: Pilapil said 'Leviton Little Neck Employee Handbook ("Handbook") state I can not Carryover Vacation

Chudnovsky: No. The Handbook state just opposite (we found confirmation on page 28 ex T).

45.     On or about 11.08.2001 at 9:50 a.m. Enzler came to my cubical and said: Toussaint order to me to install in your computer new browser to remove, previous automatically, marking drawing as "Preliminary." (Only Pilapil & Toussaint make drawing final and release it to Work Management files and to vendors). As a result I was compel to created my own logo and put it on preliminary drawing to distinguish from final as I realized Toussaint & Pilapil collect 'evidence' against me.

46.     On or about 11.26.2001 to comply with the Handbook Chudnovsky sent Email to Toussaint asking for "your permission to transfer unused 4 (four) vacation days." Next day 11.27.2001 at 10:30 a.m. Toussaint call me to his office said: I've corrected spelling in your 11.26.2001 Email if you do not mind?

Chudnovsky: I do not mind, but as I previously stated to you [and on many other occasions in the Prior Proceedings] I do not have Spell-Check program ("Spell-Check") installed in my computer. (All other Mold-Designer have Spell-Check for many years)

Toussaint: It cost Leviton $ 300.00 per computer to install the Spell-Check, Leviton will not do it for you. There will be no more purchase of permits to install the Spell-Check. You have to buy a Spell-Check devise by yourself and use it here.

Chudnovsky: Some people recently left Leviton, were fired, or took retirement why not take the Spell-Check from and give it to me [No one ever was told/required to by or to

16

pay for a tool exclusively ⬛⬛d for Leviton benefits. I did pay for Spell-⬛⬛k program installed in
my personal computer at my residence]

    Toussaint:  But those who left are from different departments ...

    Chudnovsky:  But the same Company, same location. Most computers of those
who left are just doing nothing as company not hiring at this time ... [I stopped talking, no reason
to continue, they are deaf by discrimination, intimidation, retaliation. On December of 2001 Fred
Minz, member of the Department, as Chudnovsky, took retirement offer. His computer equipped
with the Spell-Check, idling since. The Spell-Check never install to Chudnovsky computer. In fact
on about 02.11.2002 Leviton implemented a new 'Information Management E-Mail Policy' which
states, among other, 'Users must spell check all mails prior to transmission.' This bars Chudnovsky
from communication using Leviton' computer. No Mold-Designer put on similar restrictions]
(ex OO, PP).

    47.    Same day 11.27.2001 at 11:19 a.m. I get Email from Toussaint about my request
for Carryover vacation. There seem to be no problem. But now Pilapil get involved. Later same
day at 11:40 a.m. problems began. Toussaint came to my cubical stated: 'You do not have any
vacation days left'; Chudnovsky: 'I Carryover vacation from year 2000, 5 (five) days; I'm entitle
for 15 days for 2001; I took only 16 vacation days this [2001] year and I have 4 (four) vacation
days left to Carryover to year 2002. You suppose to have all records from my privies conflict with
Galgano. Remember when she added one more vacation day to my record but I never took one.'
At 4:50 p.m. Toussaint came back: 'I found you letter 'vacation end 2000' it was not sent by
Email. I has all my Email checked.' Chudnovsky: 'O.K. I do not need to look for my copy to
prove my record is correct.' (ex A, B, V).

    48.    On or about 12.03.2001 get Email from Toussaint asking "Specify the reason for
your 4 day vacation 'Carryover' request.'" It further state 'Carryover should be the exception, not
the rule.' Both requests are contrary to Leviton written policy and de facto policy. I did Carryover
vacations most of the time I spend at Leviton (same as to give Leviton free lend in the amount of
my compensation for Carryover). I was never ask specify the reason for Carryover, nor any other
Mold-Designer was ever ask to do so. Pilapil/Toussaint keep working to create new ways to
discriminate, harass, retaliate against Chudnovsky for Prior Proceedings, for present Complaints,
for the request for promotion, training, to be treated similar to my coworkers (ex I, T).

    49.    On or about 12.04.2001 at 9:10 a.m. Chudnovsky went to Enzler cubical and ask
to be told how to 'Create Assembly in Solid Designer', as 2 hour of abbreviated training I get on
or about May 9, 2001 not covered this subject. Enzler helped me to understand this complicated
process, but stated '...this is why Al [Pilapil] told [allowed] me to show you how to create
Assembly because if you do it wrong it is difficult to correct.' I did not know that it was needed
Pilapil special permission to let me know such a basic process. Other Mold-Designer were properly
trained and nobody is subject to the additional approval, but Chudnovsky (ex D).

    50.    On or about 12.05.2001 at 9:55 a.m. Aronin came to my cubical: "I spoke to Al
[Pilapil] about Carryover. Al said 'take your 8 days now, do not make me trouble with this.' But I
do not want to take 8 days, I like to take 3 days only and Carryover 5 days."

51.     On or a⬤ 12.04.2001 at 12:00 a.m. Toussaint came⬤ny cubical: You get my email about Carryover .You have to respond!

Chudnovsky:  I have to?

Toussaint:  Yes, have to. This way *They* will decide to let you Carryover or deny.
Chudnovsky:  O.K. I'll think about it, and respond.

52.     On or about 12.08.2001 at 11:55 a.m. sent Toussaint email: "Marcel, I may not specify 'the reason for 4 days vacation Carryover request' at this time. It is my understanding and believe that I do comply with 'company policy' and satisfied requirements of your email" (ex I, T,    Z)

53.     On or about 12.12.2001 I was given by Plaia annual Bonus check. The amount was 50% of my weekly compensation. During last 7- 10 years I always got 100% of my weekly compensation. (ex DD).

54.     On or about 12.18.2001 at 10:30 a.m. Employee of other department invited me to his office and said: I heard there some conflict between Al [Pilapil] and you

Chudnovsky:  Yes
Employee:  Some litigation?
Chudnovsky:  I can't discuss this ...
Employee:  Is it old or current conflict?
Chudnovsky:  I can't discuss this ... Somebody told you already ...
Employee:  You sound as spokesmen to President ...
Chudnovsky:  I can't discuss this, and I do not want to lie to you. There the rules and I have to abide by the rules.

55.     Same day 12.18.2001 at 2:55 p. m. Aronin came to my cubical:
Aronin:  How the War ...
Chudnovsky:  We prevail in Afghanistan ...
Aronin:  No, I meant 'Civil War'. Any results? I think something happened to you, when you was off last Friday ...
Chudnovsky:  I was off on Thursday, I did not feel well and there was a party at lunch time I can't attend ...
Aronin:  ... everybody talking about you. Enzler asked me about your conflict. Dave Balaban and Anil Deshmukh asked me about your conflict. All sport teem [about 15 employees] demand information from me ... Enzler told sport teem that I suppose to know details... and they demand from me ... Enzler said that Toussaint between Al [Pilapil] and you, he [Toussaint] go from Al to Sam [Chudnovsky] and back to Al.

56.     On or about 01.18.2002 at 4:00 p.m. Toussaint gave me project BA61861. The only information I was given is exhibit FF. On or about 01.29.2002 at 4:30 p.m., when the core and cavity were ready to be submitted for checking I discover, by accident, that sometime in December 2001 Enzler conducted a research for project BA61861 using Mold-Flow. The results of research which include, but not limited to, 1) Gate Analysis; 2) Cooling Analysis; 3) Runner Analysis; are most important elements of Mold-Design. Those results were on file but I do not have permission to open the file and/or my computer intentionally not equipped with software

needed to open the file and get benefits of the research. On many different occasions I asked to have my computer updated to get proper training including Mold-Flow. On or about 01.30.2002 at 9:45 a.m. I presented to Toussaint project BA61861. It was required to make 5 (five) more versions of project BA61861 before it was approved by Toussaint & Pilapil. Every time I presented new version to Toussaint & Pilapil some new correction 'uncovered.' So they release to me data available to them portion by portion to enjoy themselves. Should I had benefit of knowledge of Enzler research, as Toussaint & Pilapil, it will not take me so long. But in such a case Toussaint & Pilapil will lose means to harass and intimidate Chudnovsky (ex MM).

57.    Leviton so stubborn to discriminate Chudnovsky, so it pay Toussaint to be an messenger between Pilapil and Chudnovsky which is subject to many fanny stories. To further eliminate any contacts between Chudnovsky and Leviton facilities Leviton pays the price.

On or about 03.15.02 at 9:22 a.m. Toussaint call me to his office.

| | |
|---|---|
| Toussaint: | They call me about project BA60952 'Core 2D drawing is not match Core Solid' because 'Core Solid has no surface rises on 0.01.' Check it. |
| Chudnovsky: | [The story with project BA60952 is identical to one described in item 56 above. Five (5) different version were designed by me]. At 10:30 I reported to Toussaint that Core 2 D drawing is version No.5, but Core Solid version No.3 was wrongfully sent to WJTool by somebody ... [only Toussaint or Pilapil permitted to send out]. |
| Toussaint: | File Core Solid version No.5 in FTP and I will send it to WJTool (Toussaint left to communicate to WJTool the results). |

Same day at 11:40 a.m.

| | |
|---|---|
| Toussaint: | WJTool get Core Solid version No.5. I get voice message from WJTool that Core Solid version No.5 done incorrectly as it hit Cavity Solid. Check it. |

Same day at 2:40 p.m. get call.

| | |
|---|---|
| Toussaint: | Sam, did you check it. |
| Chudnovsky: | Yes, Core Solid version No.5 hit Cavity Solid because Cavity Solid version No.3 was wrongfully sent to WJTool ....[only Toussaint or Pilapil permitted to send out]. |
| Toussaint: | File Cavity Solid version No.5 in FTP and I will send it to WJTool |

58.    On or about 05.24.02 at 4:30 p.m. 30 minutes before Memorial Day weekend I was wrongfully reprimanded. Toussaint came to my cubical, screaming: 'You made project BA61098! How come part drawing has Radii, but mold does not?' Chudnovsky spend 15 minutes to check what Toussaint stated and reported to him 1) I do not have any drawing in my personal file not on paper nor in computer; 2) The project was done sometime in year 2000 about two years

ago; 3) It was done by somebody else, not by me; 4) I can check it further you need more information, but I have nothing to do with this project. Toussaint went to Pilapil' office and closed the door. Subject was never brought to me again, but I checked BA61098. The correction were never done to project BA61098, it was one more vicious attack against me by Toussaint & Pilapil.

59.      Plaintiff punished by Sokolow without to be formally accused. Some personal reason drive Sokolow to take adverse actions against Chudnovsky. The Prior Proceedings charge Lee Larizadeh, then HR Director at Little Neck, of taken no proper actions in respond to Chudnovsky two complaints of discriminations. Larizadeh fail to investigate complaints, filed no reports of complaints, provided no respond and took no actions to stop discrimination. But it is happened to be that Larizadeh is daughter of Sokolow.

60.      In my everyday job duty I forth to compete with the handicap of national origin discrimination and retaliation, in hostile work environment. It's not only big things it's a million little things that add up. You get lousy work assignments then they say that everything you do is wrong. Plaintiff direct the Court attention to evidence provided showing that he was denied promotions, salary increases, and other adverse employment action was causally linked to his complaints of discrimination and retaliation and adverse action affect the "terms, privileges, duration, or conditions of [his] employment." Dortz v. City of New York, 904 F. Supp. 127, 156 (S.D.N.Y. 1995).

Sam M. Chudnovsky

20